UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                                      :
JEWELL COKE COMPANY, L.P.,                            :
                                                      :          CASE NO. 1:10-CV-01946
                        Plaintiff,                    :
                                                      :
vs.                                                   :          OPINION & ORDER
                                                      :          [Resolving Doc. Nos. 6, 19]
ARCELORMITTAL USA, INC.,                              :
                                                      :
                        Defendant.                    :
                                                      :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

      The Defendant, ArcelorMittal USA, Inc. ("ArcelorMittal USA") moves the Court to dismiss this action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  [Doc. 6.]  The Plaintiff opposes the motion.  [Doc. 19.]

      For the following reasons, the Court **GRANTS** the Defendant's motion to dismiss.

## I.  Background

      In this contract dispute, Plaintiff Jewell files suit seeking declaratory judgment under Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 & 2202 declaring that ArcelorMittal USA must guarantee a coke supply agreement as currently written.  [Doc. 1.]  Jewell also asserts a claim of negligent misrepresentation.  [*Id.*]  Plaintiff Jewell is a limited liability partnership that produces blast furnace coke in Vansant, Virginia.  [*Id.* at ¶ 8.]  Defendant ArcelorMittal USA is a Delaware corporation with its principal place of business in Chicago, Illinois.  [Doc. 1 at ¶ 9; Doc. 18 at ¶ 9.]

-1-

Case No. 1:10-CV-01946
Gwin, J.

ArcelorMittal USA manufactures steel and is the parent corporation of ArcelorMittal Cleveland, Inc. and ArcelorMittal Indiana Harbor, LLC (collectively "ArcelorMittal Cleveland & Indiana"). [Doc. 1 at ¶ 9; Doc. 18 at ¶ 9.] The Court has proper diversity jurisdiction under 28 U.S.C. § 1332(a)(1) since there is complete diversity and the amount in controversy exceeds $75,000.

This particular dispute arises out of the same nucleus of facts as a related suit – also before this Court – between Jewell and ArcelorMittal Cleveland & Indiana. *ArcelorMittal Cleveland, Inc. v. Jewell Coke Co., L.P.*, No. 1:10-CV-00362 (N.D. Ohio). In October 2002, ArcelorMittal Cleveland & Indiana[1] and Jewell entered into an agreement that Jewell would annually supply approximately 700,000 tons of blast furnace coke. [Doc. 1 at ¶ 15.] This agreement ran through 2005, but provided an option for ArcelorMittal Cleveland & Indiana to extend the contract through 2007. [*Id* at ¶ 16.] In October 2003, ArcelorMittal Cleveland & Indiana also contracted to purchase 550,000 tons of coke annually from the Haverhill North Coke Company, a Jewell affiliate ("Haverhill Coke Agreement"). [*Id* at ¶ 23.] Both Jewell and Haverhill are subsidiaries of Sun Coal & Coke Company ("Sun").

Also in October 2003, ArcelorMittal Cleveland & Indiana and Jewell executed a restated and amended coke supply agreement ("the amended purchase agreement"). [*Id* at ¶ 21.] The amended purchase agreement extended the original 2002 agreement through 2007; it also contracted for the sale of 700,000 tons of coke annually by Jewell from January 1, 2008 through 2020 under a new pricing formula. [*Id.* at ¶ 21.] The parties based the amended purchase agreement pricing formula

---

[1] Prior to the merger of Mittal Steel USA and Arcelor S.A. in 2006, ArcelorMittal Cleveland & Indiana's predecessor companies were ISG Cleveland and ISG Indiana Harbor. However, for the sake of simplicity, the Court refers to these companies as ArcelorMittal Cleveland & Indiana both prior to and after the merger which resulted in their current names.

Case No. 1:10-CV-01946
Gwin, J.

on the price of coke sold to ArcelorMittal Cleveland & Indiana under the 2003 Haverhill Coke

Agreement.  [*Id.* at ¶ 27.]

In the related litigation also before the Court, ArcelorMittal Cleveland & Indiana allege that

the new pricing formula in the amended purchase agreement contains an error, which is causing them

to pay a 50% premium for Jewell coke.  *ArcelorMittal Cleveland, Inc. v. Jewell Coke Co., L.P*, 2010

WL 3749592 (N.D. Ohio Sept. 21, 2010).  In that action, ArcelorMittal Cleveland & Indiana claim

that a multiplier in the new pricing formula was inverted – a mistake that the Plaintiffs in that suit

calculate already cost them $100 million, with a total amount over the life of the contract of more

than $1 billion.  *Id.*  ArcelorMittal Cleveland & Indiana seek to have the amended purchase

agreement reformed or rescinded due to unilateral or mutual mistake.  *Id.*  The Court denied Jewell's

motion to dismiss in that suit and discovery is currently ongoing.  *Id.*

In 2007, Defendant ArcelorMittal USA was ordered by the United States Department of

Justice to sells its facility at Sparrows Point for antitrust reasons.  [Doc. 6 at 3.]  At that time,

Sparrows Point LLC was also a party to the previously discussed amended purchase agreement. [*Id.*]

In connection with the sale of Sparrows Point LLC, Plaintiff Jewell and Defendant ArcelorMittal

USA entered into a letter agreement ("guaranty agreement"), in which both Jewell and Haverhill

consented to Sparrows Point's withdrawal from the amended purchase agreement.  [Doc. 1 at ¶ 43.]

As a condition for allowing the withdrawal, ArcelorMittal USA guaranteed the obligations of

ArcelorMittal Cleveland & Indiana under the amended purchase agreement.  [*Id.* at ¶¶ 44-46.]  The

guaranty agreement currently remains in force.

On September 1, 2010, Jewell filed a complaint, seeking a declaratory judgment ruling that

in the event that the amended purchase agreement between Jewell and ArcelorMittal Cleveland &

Case No. 1:10-CV-01946
Gwin, J.

Indiana is reformed or rescinded, that ArcelorMittal USA is still required to guarantee payment under the amended purchase agreement's original terms.  [Doc. 1 at ¶ 56.]  Jewell also brings a claim of negligent misrepresentation, alleging that ArcelorMittal USA was aware that ArcelorMittal Cleveland & Indiana believed that the amended purchase agreement contained a mistake in 2008 when the guaranty agreement was signed, and that the Defendant purposely withheld this information from Jewell.  [*Id.* at ¶¶ 58-65.]

The Defendant ArcelorMittal USA says that this Court should dismiss this action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted.  Specifically, the Defendant argues that (1) the guaranty agreement specifically prohibits Jewell from bringing the current suit; (2) the declaratory judgment claim does not currently present a justiciable case or controversy; and (3) the negligent misrepresentation claim fails to state a valid cause of action.  [Doc. 6 at 1, 9.]

## II. Legal Standard

A court may grant a motion to dismiss only when "it appears beyond doubt" that the plaintiff fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 45 (1957).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).[2]  The plausibility requirement is not a "probability requirement," but requires "more than a sheer

---

[2] The Court's *Iqbal* and *Twombly* interpretation of Rule 12(b)(6) has been correctly criticized as "contrary to many of the values underlying the Federal Rules" and "that the Court's preoccupation with defense costs is misplaced and its belittlement of case management as a way of cabining those costs is unpersuasive."  Arthur Miller, *From Conley to Twombly to Iqbal: a Double Play on the Federal Rules of Civil Procedure,* 60 Duke L.J. 1, 2 (2010).

Case No. 1:10-CV-01946
Gwin, J.

possibility that the defendant has acted unlawfully." *Id.*

Federal Rule of Civil Procedure 8 provides the general standard of pleading and only requires that a complaint "contain . . . a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1949 (citations removed). In deciding a motion to dismiss under Rule 12(b)(6), "a court should assume the[] veracity" of "well-pleaded factual allegations," but need not accept a plaintiff's conclusory allegations as true. *Iqbal*, 129 S. Ct. at 1949-51.

### III. Analysis

III.A *Declaratory Judgment*

The Defendant makes two related arguments for why the Plaintiff's cause of action seeking a declaratory judgment must be dismissed. First, the Defendant says that the Court should dismiss this action since the guaranty agreement specifically prohibits Jewell from bringing the current suit. [Doc. 6 at 4-5.] Second, the Defendant says that the declaratory judgment claim does not currently present a justiciable case or controversy because it is not yet ripe. [*Id.* at 5-6.] The Court finds both of these arguments persuasive and **GRANTS** the Defendant's motion to dismiss the Plaintiff's declaratory judgment action without prejudice.

i.  Suit Barred by Contractual Provision

First, on the contract issue, the Court finds that the guaranty agreement specifically prohibits suit until there is a default on the underlying obligation. Section 2 of the guaranty agreement reads:

[N]otwithstanding any other provisions in this Guaranty, no action shall commence

-5-

Case No. 1:10-CV-01946
Gwin, J.

> against the Guarantor unless and until written notice of default is first made upon the
> applicable Guarantor's Affiliate and Guarantor pursuant to the requirements set forth
> in the Haverhill Contract or, as applicable, the Jewell Contract, and such Guarantor's
> Affiliate or the Guarantor fails to cure such default within the applicable cure period.

[Doc. 1-3 at 17.]  "Issues of contract interpretation are generally matters of law and therefore [are] suitable for disposition on a motion to dismiss." *PB Americas v. Continental Cas. Co.*, 690 F. Supp.2d 242, 247 (S.D.N.Y. 2010) (quotation omitted).  The interpretation of a contract of suretyship is governed by the same standards which govern the interpretation of contracts in general. *General Authority for Supply Commodities, Cairo, Egypt v. Insurance Co. of N.A.*, 951 F. Supp. 1097 (S.D.N.Y. 1997) (citing *General Phoenix Corp. v. Cabot*, 89 N.E.2d 238, 214 (N.Y. 1949)). Additionally, it is a basic contract principle that when the parties set down their agreement in a clear, complete document, that their writing should be enforced according to its terms. *Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*, 807 N.E.2d 876, 879 (N.Y. 2004).[3/]

The plain language of the guaranty agreement prohibits suit against the Guarantor (ArcelorMittal USA) until "written notice of default is first made upon the applicable Guarantor's Affiliate." [Doc. 1-3 at 17.] However, no allegation is made by Jewell that ArcelorMittal Cleveland & Indiana defaulted on the underlying obligation or that any sort of written notice was given to those companies.  Indeed, Jewell admits in its complaint that ArcelorMittal Cleveland & Indiana "have continued to pay under the Jewell Coke Supply Agreement and have not refused the shipments of coke by Jewell.  [Doc. 1 at ¶ 41.]

The Plaintiff attempts to circumvent this provision of the contract by saying that "the provision does not apply to this action [because] Jewell does not sue to enforce [the Defendant's]

---

[3/] The Court finds that the choice-of-law provision in the guaranty agreement is valid under Ohio choice-of-law principles. *Tele-Save Merch. Co. v. Consumers Distrib. Co., Ltd.*, 814 F.2d 1120, 1122 (6th Cir.1987).  The Court will apply New York law to the terms of the contract.

Case No. 1:10-CV-01946
Gwin, J.

liability to pay any amount owed . . . Rather, Jewell seeks a declaration of [the Defendant's] obligations under the Guaranty." [Doc. 19 at 5.]  However, this argument is belied by the plain language of the contract, which states that "no action shall commence . . . unless and until written notice of default is first made." [Doc. 1-3 at 17.] A suit for declaratory judgment is "an action" that will determine legal rights and obligations under the guaranty agreement and any natural reading of this provision would include a declaratory judgment action within its reach.  Essentially, Jewell is improperly attempting to amend this provision to read that only actions brought specifically to collect on the guaranty are limited.  The Court rejects this position.

Since the plain language of this contract prohibits suit against the Defendant until there is a default on the amended purchase agreement, this action is premature.  Pursuant to the contract, this action may be appropriately be filed at a later date.  Therefore, the Court finds that the Plaintiff's claim seeking a declaratory judgment should be dismissed without prejudice.

ii.  Actual Case or Controversy

Although this cause of action is disposed of by the finding that the plain terms of the contract bars suit, the Court will also consider the Defendant's argument that this suit is not yet ripe.

Federal courts may only adjudicate actual "cases" and "controversies." U.S. Const., art. III, § 2.  This constitutional limitation applies to cases brought under the Declaratory Judgment Act. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937); 28 U.S.C. § 2201.  Under Article III of the Constitution, a suit is not a justiciable "case" or "controversy" if it is not yet ripe.  "Ripeness is a question of timing," City Communications, Inc. v. Detroit, 888 F.2d 1081, 1089 (6th Cir. 1989), and a "claim is not amenable to judicial process when it is filed too early." Sch. Dist. v. Sec'y of the United States Dep't of Educ., 584 F.3d 253, 260 (6th Cir. 2009) (citations omitted).

-7-

Case No. 1:10-CV-01946
Gwin, J.

When a controversy depends on a future or contingent event, a court must carefully analyze whether the dispute is ripe.  To determine whether an action is ripe, courts in the Sixth Circuit consider:  (1) the likelihood that the alleged harm will come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication on the merits; and (3) the hardship to the parties if judgment is withheld until after the harm occurs.  *Adult Video Ass'n v. United States DOJ*, 71 F.3d 563, 568 (6th Cir. 1995).  The Court will consider each of these factors in turn.

On the first factor, the Court finds that the particular harm alleged is speculative, at best. Although ArcelorMittal Cleveland & Indiana have challenged their obligation to pay the amount owed under the amended purchase agreement, those parties have continued to pay under the agreement and have not given any indication that a default is likely.  [Doc. 1 at ¶ 41.]  Moreover, the alleged harm – the failure to pay on the amended purchase agreement as currently written – is entirely contingent upon the outcome of the pending litigation in *ArcelorMittal Cleveland, Inc. v. Jewell Coke Co., L.P.*, No. 1:10-CV-00362 (N.D. Ohio).  Thus, for the harm to materialize, Defendant Jewell must first be unsuccessful in that suit.  A "claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Wignet v. JP Morgan Chase Bank. N.A.*, 537 F.3d 565, 582 (6th Cir. 2008) (citing *Cooley v. Granholm*, 291 F.3d 880, 883-84 (6th Cir. 2002)).  Therefore, the Court finds that this factor weighs in favor of finding that the action is not yet fit for review.  *Beck v. Gannett Satellite Informational Network, Inc.*, 124 Fed. App'x 311, 324-25 (6th Cir. 2005).

The Court finds that the second factor – whether the factual records is sufficiently developed to produce a fair adjudication on the merits – weighs slightly in favor of the Plaintiff.  This suit will largely turn on the intent of the parties in drafting the guaranty agreement; specifically, whether

-8-

Case No. 1:10-CV-01946
Gwin, J.

ArcelorMittal USA must guaranty the original terms of the amended purchase agreement, even if the amended purchase agreement is reformed or rescinded.  [Doc. 6 at 7-9; Doc. 19 at 6.]  The factual record likely could be developed if this claim proceeded to allow the Court to make these determinations.

The third factor – the hardship to the parties if judgment is withheld until after the harm occurs – weighs in favor of the Defendant.  Jewell alleges that its business operations will be jeopardized should there be any gap in payment on the amended purchase agreement.  [Doc. 19 at 7.]  However, this harm is speculative.  Indeed, the Plaintiff will suffer no harm unless they are unsuccessful in the underlying lawsuit.  The Plaintiff is really alleging that they are faced with great uncertainty because ArcelorMittal Cleveland & Indiana may, in the future, default on the amended purchase agreement.  *Nebraska Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1038 (8th Cir. 2000) (stating harm may validly include uncertainty).

In this case, however, the uncertainty does not rise to the level of undue hardship.  *See Norton v. Ashcroft*, 298 F.3d 547, 555 (6th Cir. 2002).  Specifically, under the express terms of the guaranty agreement, the Plaintiff contractually agreed not to bring suit to enforce payment against ArcelorMittal USA until a notice of default is first filed.  [Doc. 1-3 at 17.]  Thus, at all times under this contract, Jewell faced the risk of a gap in payment because it agreed not to bring suit until a default occurred.  The prospect of having to wait for a default before adjudicating rights under the guaranty agreement is not an unexpected risk and is therefore not an undue hardship.  Although Jewell undoubtedly prefers to adjudicate its legal rights without waiting for a potentially harmful gap in payment – an insurance policy of sorts – in reality Jewell currently faces no greater risk of harm than is normally associated with a long-term business contract.  The Court finds that no irreparable

-9-

Case No. 1:10-CV-01946
Gwin, J.

harm or substantial hardship will result should the Court delay adjudication of the rights of the parties under the guaranty agreement.

Accordingly, after considering whether this action for declaratory judgment is fit for judicial resolution, the Court finds that the action is not yet ripe.  First, ArcelorMittal Cleveland & Indiana did not default or even threaten to default on the underlying contract; second, the need for judicial resolution of the exact nature of the payment guaranteed by the guaranty agreement is entirely contingent on outcome of other pending litigation; and third, the Plaintiff does not currently face any greater risk of harm than is normally associated with a business contract.  Thus, the action is not yet ripe and the Court must dismiss the action without prejudice.  *Winget*, 537 F.3d at 582.[4/]

*III.B   Negligent Misrepresentation*

The Plaintiff also asserts a claim alleging that  the Defendant possessed knowledge in 2008, when the guaranty agreement was signed, that ArcelorMittal Cleveland & Indiana believed that the underlying amended purchase agreement contained a mistake in its pricing formula.  [Doc. 1 at ¶¶ 57-65.]  The  Plaintiff says that the Defendant concealed this information, inducing the Plaintiff to enter into the guaranty agreement.  [*Id.*]

As a preliminary matter, the parties agree that New York state law controls with respect to the guaranty agreement.  [Doc. 1 at ¶ 50; Doc. 6 at 6; Doc. 19 at 14.]  The guaranty agreement provides that "[t]his guaranty and the rights and obligations of Haverhill, Jewell and Guarantor shall

---

[4/]  The Court also notes that it leaves the issue of whether it would be justified in declining jurisdiction under the declaratory judgment act unresolved.  28 U.S.C. § 2201.  The Declaratory Judgment Act states that a court "may declare the rights and other legal relations of any interested party seeking this declaration."  28 U.S.C. § 2201.  The Supreme Court has repeatedly characterized the Declaratory Judgment Act as "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995); *see also Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008).  However, since the Court already found that this suit must be dismissed because express terms of the contract bar the current suit and because the suit is not yet ripe, the Court need not decide this issue.

-10-

Case No. 1:10-CV-01946
Gwin, J.

be governed by and construed in accordance with the law of the State of New York . . ." [Doc. 1-3 at 19.]  Although the parties agree that New York law should apply to the claim of negligent misrepresentation, the language of the contract does not necessarily suggest such a broad construction.

When a court exercises diversity or supplemental jurisdiction over state law claims, "the choice-of-law rules of the forum state . . . govern the determination whether to enforce the . . . selection of . . . law." *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941); *Banek Inc. v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 361 (6th Cir. 1993).  In this case the forum state is Ohio, so Ohio choice of law rules govern in deciding whether this Court will apply New York law as per the choice of law provision in the guaranty agreement.

The Ohio Supreme Court has adopted the Restatement (Second) of Conflict of Laws, which provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Tele-Save Merch. Co.*, 814 F.2d at 1122.

In this case, the Restatement factors favor the application of the parties choice of law provision.  Applying New York law would not be adverse or repugnant to Ohio public policy and

Case No. 1:10-CV-01946
Gwin, J.

Ohio does not have a materially greater interest in this suit than does New York. Having determined that the choice of law provision is valid, the Court must now turn to determining the provision's precise scope.

The Sixth Circuit has held that similar provisions apply not only to claims arising under a contract, but also to related tort claims. In *Banek, Inc. v. Yogurt Ventures U.S.A., Inc.*, the Sixth Circuit held that a choice of law provision which stated that Georgia law was to govern "all rights and obligations" pertaining to a franchise agreement was "sufficiently broad so as to cover [the Plaintiffs'] fraud and misrepresentation claims" as well. *6 F.3d 357, 363 (6th Cir. 1993)*. The Court based its holding on the fact that the fraud and misrepresentation claims were "directly" and not "tangentially" related to the franchise agreement. *Id.* Similarly, in *Baumgardner v. Bimbo Food Bakeries Distribution, Inc.*, 697 F. Supp. 2d 801 (N.D. Ohio 2010), the court held that a choice of law provision which stated that "the validity, performance, and interpretation of this agreement shall be controlled and construed in accordance with the laws of New York" was broad enough to apply to claims of tortious interference with contract and unjust enrichment. *697 F. Supp. 2d at 804-06*. The court in *Baumgardner* noted that, while these tort claims were "not explicitly covered" by the contract, they were nevertheless "not tangential" but rather "closely related to 'performance of the agreement.'" *Id.* at 806; *see also Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1139-40 (6th Cir. 1993) (holding choice of law provision applicable to fraud and misrepresentation claims when Plaintiffs were not asserting "claims that arose incidentally of the contractual relationship" but rather claims that "put the validity of the contract in issue.")

In the instant case, the Plaintiff's claim of negligent misrepresentation is not explicitly covered by the choice of law provision, but it is closely related to the performance and underlying

Case No. 1:10-CV-01946
Gwin, J.

negotiation of the contract. Therefore, the Court finds that this claim is subject to the parties' choice of law provision, and as a result, the Court will apply New York law to the claim.

Proceeding to the merits, the Plaintiff alleges that the Defendant possessed knowledge in 2008, when the guaranty agreement was signed, that ArcelorMittal Cleveland & Indiana believed the underlying amended purchase agreement contained a mistake in its pricing formula. [Doc. 1 at ¶¶ 57-65.] The Plaintiff says that the Defendant concealed this information, inducing the Plaintiff to enter into the guaranty agreement and causing resultant damages. [Id.] The Defendant argues that the Court should dismiss the Plaintiff's claim of negligent misrepresentation under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted under the applicable New York law. [Doc. 6 at 9.]

"Under New York law, the elements for a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 21 (2d Cir. 2000).

Under the first element of the cause of action, "a party must demonstrate that the person making the misrepresentation possessed specialized or unique experience, or the persons involved are in a special relationship of confidence and trust such that reliance on the negligent misrepresentation is justified." *Salesian Soc'y, Inc. v. Nutmeg Partners Ltd.*, 271 A.D.2d 671, 673 (N.Y. App. Div. 2000) (citing *Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (N.Y. 1996)). Establishing

-13-

Case No. 1:10-CV-01946
Gwin, J.

a "special relationship" under this element requires showing a fiduciary relationship or some other

closer degree of trust beyond an ordinary business relationship.  *See H&R Project Associates, Inc.*

*v. City of Syracuse*, 289 A.D.2d 967, 969 (N.Y. App. Div. 2001).

The Plaintiff here does not allege that any special relationship existed between the parties.

New York courts have consistently held that in the absence of a special relationship an action

alleging negligent misrepresentation must be dismissed.  *Murphy v. Kuhn*, 682 N.E.2d 972, 974

(N.Y. 1997); *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d. Cir. 2003); *Stewart*

*v. Jackson & Nash*, 976 F.2d 86, 90 (2d Cir. 1992).  Here, Jewell and ArcelorMittal USA were

commercial parties engaged in an arm's length transaction and nothing in the complaint suggests that

a special relationship existed between them.  *See, e.g. LaSalle Bank v. Citicorp Real Estate*, 2003

WL 1461483, at *3-*6 (S.D.N.Y. Mar.21, 2003) (holding that no special relationship existed

between a mortgage loan seller and purchaser where duty to provide accurate information about

financial status of companies subject to mortgage arose solely from the operative purchase

agreement); *Kimmell*, 675 N.E.2d at 454 ("Professionals, such as lawyers and engineers, by virtue

of their training and expertise, may have special relationships of confidence and trust with their

clients, and in certain situations we have imposed liability for negligent misrepresentation when they

have failed to speak with care").

The Plaintiff alternatively attempts to satisfy this element of the offense by alleging that

ArcelorMittal USA possessed specialized knowledge since it was "uniquely situated to attest to what

its affiliates would have known of their business affairs."  [Doc. 1 at ¶ 59.]  This argument is not

persuasive.  All that Jewell really alleges is that ArcelorMittal USA possessed superior knowledge

of its own internal affairs and the affairs of its affiliates than did Jewell.  However, basing a claim

-14-

Case No. 1:10-CV-01946
Gwin, J.

of negligent misrepresentation on this sort of knowledge would transform every contract dispute into a negligent misrepresentation claim. *JP Morgan Chase Bank v. Winnick*, 350 F. Supp.2d 393, 403 (S.D.N.Y. 2004) ("Borrowers will almost always have 'specialized' knowledge of the particulars of their businesses, and indeed, of the facts underlying any misrepresentations made in support of desired loan . . ."); *LaSalle*, 2003 WL 1461483, at *3-*4 (no duty arose from seller's "unique knowledge or access to information" about mortgage status). Accordingly, the Court finds that the Plaintiff fails to plead allegations sufficient to meet the first element of a cause of action for negligent misrepresentation.

The Defendant also argues that the Plaintiff failed to sufficiently allege facts that would constitute the fifth element of the claim of negligent misrepresentation – reliance resulting in detriment. [Doc. 6 at 13.] Specifically, the Plaintiff says that there is no reliance because the sale of Sparrows Point was mandated by court order and that no damages were suffered because there has been no default on the underlying amended purchase agreement. The Court finds the Defendant's argument persuasive as to damages. As already set forth in this opinion, any cause of action that Jewell might possess should the underlying amended purchase agreement be reformed or rescinded is premature. Likewise, any claim of detriment arising out of this guaranty agreement is also premature and speculative.[5/]

Since the Plaintiff's pleadings fail to allege a claim of negligent misrepresentation, the Plaintiff's claim must be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted.

## IV. Conclusion

---

[5/] The Court need not decide the reliance issue, since the Plaintiff's claim already fails to state this element due to a lack of damages.

Case No. 1:10-CV-01946
Gwin, J.

For the foregoing reasons, Court **GRANTS** the Defendant's motion to dismiss and dismisses all claims against the Defendant.  The Court dismisses Count I (declaratory judgment) without prejudice.  The Court dismisses Count II (negligent misrepresentation) with prejudice.

IT IS SO ORDERED.

Dated: November 8, 2010                                  s/            *James S. Gwin*
                                                         JAMES S. GWIN
                                                         UNITED STATES DISTRICT JUDGE

-16-